IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDRE LITTLE,<br><br>        Plaintiff,<br><br>    v.<br><br>CITY OF RICHMOND, et al.,<br><br>        Defendants. | Case No.: C-13-02067 JSC<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS** |

This civil rights action arises out of the use of force on Plaintiff Andre Little, which allegedly included the tasing of his scrotum area and his back. Now pending before the Court is Defendant Officer Kristopher Tong's motion to dismiss. Having carefully considered the parties' briefing, and having had the benefit of oral argument on October 17, 2013, the Court DENIES in part and GRANTS in part Tong's motion with leave to amend.

**ALLEGATIONS OF THE COMPLAINT**

In the spring of 2012 at approximately 9:00 a.m., Officer Tong of the Richmond Police Department approached Mr. Little on the Amtrak platform in Richmond, California as Little sat waiting for the train to Stockton, California. Tong questioned Little, who is African-American, about

whether he was associated with a group of African-American teenagers who were "previously detained for questioning." (Dkt. No. 1 ¶ 11.) Little stated that he was not part of that group. Tong then told Little to move down the platform. Plaintiff refused and "made it clear that he needed to be close by in order to board his train." (*Id.* at ¶ 12.)

Tong responded by grabbing Little's wrists. Another officer assisted Tong by tackling Little and slamming him on the ground. Little began screaming, "Stop! Let me go! You have the wrong guy!"

Tong then pulled out a Taser gun and pointed it at Little's head. Little pushed the gun away in protest. Tong then pointed the Taser gun at Little's scrotum area. Little began screaming, "Don't Tase me bro! Please don't Tase me in the balls! You don't have to do this!" Tong responded by tasing Little's scrotum. The officers then placed Little on his stomach and tased him on his back. The officers stopped when the Taser dart became lodged in Little's back.

The officers took Little to Doctor's Medical Center in San Pablo, California. The Taser dart was surgically removed from Little's back. Little was then transferred to Martinez County Jail, and was released a few days later. Little suffered "multiple injuries due to the beating and Tasing of his scrotum." (*Id.* at ¶ 14.)

Little filed this lawsuit 14 months later, naming the City of Richmond and Tong as defendants, and bringing claims under 42 U.S.C. Section 1983, California Civil Code Sections 51.7 and 52.1, and common law tort. Tong now moves to dismiss Little's claims under Sections 51.7 and 52.1.

**LEGAL STANDARD**

A Rule 12(b)(6) motion challenges the sufficiency of a complaint as failing to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A facial plausibility standard is not a "probability requirement" but mandates "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations and citations omitted). For purposes of ruling on a Rule 12(b)(6) motion, the court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the non-moving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). "[D]ismissal may be based on either a lack of a cognizable legal

theory or the absence of sufficient facts alleged under a cognizable legal theory." *Johnson v. Riverside Healthcare Sys.*, 534 F.3d 1116, 1121 (9th Cir. 2008) (internal quotations and citations omitted); *see also Neitzke v. Williams*, 490 U.S. 319, 326 (1989) ("Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law.").

Even under the liberal pleading standard of Federal Rule of Civil Procedure 8(a)(2), under which a party is only required to make "a short and plain statement of the claim showing that the pleader is entitled to relief," a "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555.) "[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004); *see also Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011) ("[A]llegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively"), *cert. denied*, 132 S. Ct. 2101 (2012). The court must be able to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663. "Determining whether a complaint states a plausible claim for relief ... [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 663-64.

**DISCUSSION**

Tong argues that Little's claims pursuant to Section 51.7 and Section 52.1 fail to state a claim under Rule 12(b)(6). For the reasons stated below, the Court agrees with Tong as to the Section 51.7 claim, but disagrees as to the Section 52.1 claim.

**A.   Section 51.7**

Under California Civil Code section 51.7, an individual has the "right to be free from violence, or intimidation by threat of violence" committed because—as relevant to this case—of the individual's race, color, ancestry, or national origin. *See* Cal. Civil Code §§ 51.7, 51(b).

3

Tong argues that Little's Section 51.7 claim is deficient because Little's Complaint fails to allege facts plausibly suggesting that Tong's actions were motivated by racial animus.  Tong is correct.

In Little's opposition to Tong's motion, Little contends that he "was on a busy train platform during a busy time of morning with many other train passengers and passersby, and yet [Tong] singled him out as probably belonging to a group of young African American men."  (Dkt. No. 17 at 7.)  The facts alleged in the Complaint, however, are not as detailed as the facts provided in Little's briefing.  Specifically, in the Complaint Little merely alleges that he was approached by Tong "while he sat waiting for the train," and that Tong "questioned whether [he] was associated with a group of African-American teenagers who were previously detained for questioning."  (Dkt. No. 1 at ¶ 11.)  Little's Complaint, as presently drafted, does not provide facts that plausibly suggest Little was "singled out."  The Complaint provides no facts that indicate where Little was standing in relation to either the detained young men or the other train passengers and passersby.  For instance, the Complaint is silent as to whether Little was standing next to the previously detained young men, or whether Little was away from the men and/or among other non-African-Americans who were not questioned by Tong.  Without these facts, Little's Complaint goes no further than alleging racial animus based solely on him being recognizable as African-American.  Such Section 51.7 claims are subject to dismissal.  *See, e.g.*, *Sullivan v. City of San Rafael*, 2012 WL 3236058, at *9 (N.D. Cal. Aug. 6, 2012) (dismissing Section 51.7 claim that was based solely on the allegation that plaintiff was recognizable as a homosexual Asian-American).  The Court accordingly GRANTS Tong's motion to dismiss Little's Section 51.7 claim with leave to amend.

While the Court agrees with Tong that Little's Complaint is deficient, the Court is not persuaded by Tong's argument that Little's claim fails even if he amends his Complaint to allege the additional facts contained in his opposition brief.  Tong's argument focuses on his command that Little move down the platform, which Tong contends was not motivated by racial animus.  However, if it can be plausibly inferred that Tong approached Little and questioned him about his association with the detained African-American men *because* Little is also African-American, such racial animus provides the further plausible inference that Tong's actions occurring in close temporal proximity—

4

ordering Little to move down the platform and the use of force—were also motivated by racial animus.

Tong's reliance on *Boarman v. County of Sacramento*, 2013 WL 3894167 (E.D. Cal. July 26, 2013) is unavailing. Boarman brought suit after allegedly being mistaken as a shoplifter at a drugstore, arrested, thrown to the ground, and shot with a Taser. Boarman alleged that the arresting officer told her that she "fit the description," and responded affirmatively when she asked if the description was of a black female. *Id.* at 3. On Boarman's third amended complaint, she further alleged that she had earlier overheard the drugstore employee's call to the police in which the employee did not overtly mention race. The court dismissed Boarman's Section 51.7 claim, summarily rejecting her argument that those facts plausibly suggested that the officer was "never advised of the suspect's race but rather leapt to the conclusion that the suspect must be black." *Id.* Because some of the relevant facts and analysis are lacking from the court's decision in *Boarman*, that case is of little use to this Court. Nonetheless, this case is distinguishable from *Boarman* because, if Little amends his Complaint as he requests, he alleges facts that plausibly suggest that he was "singled out" because of his race and abruptly questioned by police about his involvement with the criminal activities of other young men of his same race. This differs from *Boarman* where the facts available in the court's order do not suggest that the plaintiff was suddenly singled out by the police, but rather indicate some level of involvement between the plaintiff and the events giving rise to the police activity. *See id.* at *3 (recounting plaintiff's allegation that she overheard the drugstore employee's phone call to the police).

**B.     Section 52.1**

The Bane Act, California Civil Code Section 52, provides a right to relief when someone "interferes by threats, intimidation, or coercion . . . with the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of this state." The elements of a claim for relief are: 1) an act of interference with a legal right by 2) intimidation, threats or coercion. *Haynes v. City and County of San Francisco*, 2010 WL 2991732, at *6 (N.D. Cal. Jul. 28, 2010); *Jones v. Kmart Corp.*, 17 Cal. 4th 329, 334 (1998).

The parties' dispute centers around whether a Bane Act claim requires an allegation that the defendant used threats, intimidation, or coercion independent from what is inherent in the excessive force itself. Tong relies primarily on *Shoyoye v. County of Los Angeles*, 203 Cal. App. 4th 947 (2012) in arguing that allegations of independent coercion are required in every instance of excessive force. Tong is incorrect.

As a court in this District has already correctly concluded, Tong's argument "is based on an overly broad reading of *Shoyoye*, one which conflicts with California Supreme Court precedent." *Holland v. City of San Francisco*, 2013 WL 968295, at *10 (N.D. Cal. Mar. 12, 2013). The *Holland* court explained the distinction in the caselaw between intentional and unintentional constitutional violations:

> In *Venegas v. County of Los Angeles*, the California Supreme Court held that the plaintiffs "adequately stated a cause of action under section 52.1" based on allegations showing an unconstitutional search and seizure. 32 Cal. 4th 820, 827–28 & 843 (2004). The court pointed out that section 52.1 does not "extend to all ordinary tort actions" because it is predicated on the violation of a "constitutional or statutory right," as opposed to common law. *Id.* at 843. Because the plaintiffs' allegations involved "unconstitutional search and seizure violations" and not "ordinary tort claims," they had "adequately stated a cause of action under section 52.1." *Id.*
>
> By contrast, in *Shoyoye*, an administrative error resulted in the plaintiff being erroneously detained for two weeks after his release date. 203 Cal. App. 4th at 959. The court held that in the absence of a showing of knowledge or intent, the coercion inherent in a wrongful overdetention—the bare fact that the plaintiff was not free to leave the jail—was insufficient to satisfy section 52.1's requirement that the interference with the plaintiff's rights be accomplished "by threats, intimidation, or coercion." *Id.* The court reasoned that section 52.1 was not intended to redress harms "brought about by human error rather than intentional conduct." *Id.* It distinguished the facts in *Venegas* on the ground that, in that case, "the evidence presented could support a finding that the probable cause that initially existed to justify stopping the plaintiffs eroded at some point, such that the officers' conduct became intentionally coercive and wrongful." *Id.* at 961. The *Shoyoye* court thus acknowledged that a Bane Act claim could be based on an arrest without probable cause, even if no "threat, intimidation, or coercion" were shown separate and apart from that inherent to the underlying constitutional violation.

*Id.*; *see also M.H. v. County of Alameda*, 2013 WL 1701591, at *7 (N.D. Cal. Apr. 18, 2013) (following *Holland*). Further, the *Shoyoye* court expressly laid out the distinction between Section 52.1 claims based on intentional conduct and those based on negligent conduct: "Unlike the Supreme

6

Court in [*Venegas*], we are indeed required to decide here whether section 52.1 affords protection to every claimant who alleges interference with his or her right to be free of an unreasonable seizure, i.e., over-detention beyond the time lawfully permitted, *where the over-detention occurs because of mere negligence rather than a volitional act intended to interfere with the exercise or enjoyment of the constitutional right*." 203 Cal. App. 4th at 957 (emphasis added). Thus, Section 52.1 does not necessarily require threats, intimidation, or coercion independent of the violation of the constitutional right. In addition, because the alleged unconstitutional conduct was intentional, and not unintentional as in *Shoyoye*, Little adequately alleges coercion necessary to plead a Bane Act violation.

Tong's additional arguments to the contrary are unpersuasive. Tong makes the curious assertion that cases, such as *Holland*—which interpret *Shoyoye* as distinguishing between intentional and unintentional conduct—"fail to take into account the fact that Section 52.1 requires intentional interference with civil rights." (Dkt. No. 19 at 5.) However, by requiring a Section 52.1 plaintiff to allege intentional conduct that is threatening, coercive, or intimidating, those courts have explicitly taken Section 52.1's requirement of intentional interference into account. *See Bass v. City of Fremont*, 2013 WL 891090, at *6 (N.D. Cal. Mar. 8, 2013) ("*Shoyoye* is best viewed as a carve-out from the general rule stated in *Venegas*. The key difference in the facts of the two cases is—as the *Shoyoye* court put it—that the constitutional violation in that case was brought about solely 'by human error rather than intentional conduct.'"); *see also M.H.*, 2013 WL 1701591, at *8 ("[T]he relevant distinction under the Bane Act is between intentional and unintentional conduct.").

To the extent Tong argues that the failure to require coercion independent of the intentional constitutional violation eliminates any *mens rea* requirement from Section 52.1, the Court is also not persuaded. Even assuming Section 52.1 requires some sort of subjective intent to interfere with a person's constitutional rights apart from the intentional conduct in performing such interference, the Court fails to see how a subjective intent requirement is extinguished under the Court's holding. To say that the conduct must be intentional—but not necessarily independent—is not to say any subjective intent requirement is eliminated.

In addition, Tong cites this Court's decision in *Hunter v. City & County of San Francisco*, 2012 WL 4831634 (N.D. Cal. Oct. 10, 2012) and summarizes that case as "following *Shoyoye*." (Dkt.

7

No. 16 at 5 n.2.) Contrary to Tong's suggestion, this Court did not directly address the scope of *Shoyoye*'s holding in its *Hunter* decision. That is because Hunter did not dispute, at least in his opposition to the City's motion for summary judgment, the City's interpretation of *Shoyoye*'s holding; rather, Hunter argued that *Shoyoye* was not binding on this Court and, if it was, Hunter's Bane Act claim complied with *Shoyoye*'s supposed requirement that the coercion be independent of the constitutional violation. This Court's discussion of *Shoyoye* is as follows:

> The California Court of Appeal . . . recently addressed this issue and held that "where coercion is inherent in the constitutional violation alleged . . . the statutory requirement of 'threats, intimidation, or coercion' is not met. The statute requires a showing of coercion independent from the coercion inherent in the wrongful detention itself." *Shoyoye v. County of Los Angeles*, 203 Cal. App. 4th 947, 959 (2012). This Court is bound by *Shoyoye* "unless there is convincing evidence that the California Supreme Court would hold otherwise." [citations omitted]
>
> Plaintiff responds that even under *Shoyoye* he has submitted evidence of threats, intimidation or coercion separate and independent from the excessive force itself based on his testimony that the officers taunted him during the encounter.

*Hunter*, 2012 WL 4831634, at *5. This Court went on to find that Hunter's Bane Act claim could proceed against one of the defendants. *Id.* Because Hunter did not challenge the City's interpretation of *Shoyoye*, the question of *Shoyoye*'s full scope was not presented before this Court, as it is now. Thus, this Court's ruling in *Hunter* is not helpful to Tong.

Further, at this early stage of the litigation, the facts surrounding the alleged excessive force and arrest are not well developed, thus making any dismissal of the Section 52.1 claim premature.

Tong's motion to dismiss Little's Bane Act claim is accordingly DENIED without prejudice to Tong's ability to raise the same arguments based on a more complete factual record or developments in the caselaw or both.

## CONCLUSION

For the reasons stated, Tong's motion is GRANTED with leave to amend as to Little's Section 51.7 claim, and DENIED as to Little's Section 52.1 claim. Little shall file his Amended Complaint within 14 days of the date of this Order.

IT IS SO ORDERED.

8

Dated: October 17, 2013

_____
JACQUELINE SCOTT CORLEY
UNITED STATES MAGISTRATE JUDGE