UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDRE LITTLE,<br><br>    Plaintiff,<br><br>    v.<br><br>CITY OF RICHMOND, et al.,<br><br>    Defendants. | Case No. 13-cv-02067-JSC<br><br>**ORDER RE MOTION FOR JUDGMENT AS A MATTER OF LAW**<br><br>Re: Dkt. No. 163 |

Plaintiff Andre Little brought this civil rights action against Defendants City of Richmond and Richmond Police Officer Kristopher Tong ("Defendant" or "Officer Tong") under 42 U.S.C. Section 1983 following Plaintiff's arrest at the Richmond Amtrak station. Plaintiff's amended complaint alleged a federal claim for excessive force, the gravamen of which is that Officer Tong used excessive and unreasonable force when he grabbed Plaintiff, took him to the ground, and used a Taser on him three times—as well as a supplemental state law causes of action. (Dkt. No. 27.) Plaintiff's excessive force claim and related state claims against Officer Tong proceeded to trial. The first trial resulted in a hung jury, with the jurors split four to four. After a one-week re-trial, a jury returned a verdict for Defendant, finding that Officer Tong did not use excessive force. (Dkt. No. 157.) Presently before the Court is Plaintiff's Renewed Motion for Judgment as a Matter of Law. (Dkt. No. 163.) Having considered the parties' submissions, and having had the benefit of oral argument on June 4, 2015, the Court DENIES Plaintiff's motion in its entirety.

## BACKGROUND

Plaintiff filed the instant action against the City of Richmond and Officer, alleging violations of his civil rights under state and federal law following an incident that occurred at the Richmond Amtrak station on March 16, 2012. The First Amended Complaint filed October 31,

2013 alleges seven causes of action: (1) excessive force in violation of the Fourth Amendment; (2) municipal liability under *Monell*; (3) interference with civil rights in violation of California Civil Code § 52.1; (4) race discrimination in violation of California Civil Code § 51.7; (5) intentional infliction of emotional distress; (6) assault and battery; and (7) negligent infliction of emotional distress. (Dkt. No. 27.) On November 6, 2014, the Court granted Defendants' unopposed motion for partial summary judgment on the following four causes of action: (1) municipal liability under *Monell*; (2) violation of California Civil Code § 51.7; (3) intentional infliction of emotional distress; (4) negligent infliction of emotional distress. (Dkt. No. 44.) This left Plaintiff's excessive force claim against Officer Tong, Civil Code § 52.1, and assault and battery claims to proceed to trial.

The Court heard a number of motions in limine before trial began. Among them was Defendant's motion "to exclude evidence and argument regarding false arrest and the disposition of plaintiff's arrest." (Dkt. No. 76 at 2.)[1] The Court granted the motion, noting that "Plaintiff is not seeking leave to add a claim for false arrest and the jury will not be instructed on the elements of a false arrest claim." (*Id.*) The order continues, "[n]otwithstanding this ruling, the facts surrounding Plaintiff's arrest are admissible as they factor into the excessive force analysis." (*Id.*) Neither party requested a jury instruction on false arrest or the lawfulness of detention or arrest. The jury instructions and verdict form did not ask the jury to opine on the lawfulness of the detention or arrest, but rather solely asked about the officer's use of force. (Dkt. Nos. 80, 84, 87.)

The first jury trial began on January 26, 2015. Following a week-long trial, the Court declared a mistrial when the jury hung four to four after two full days of deliberation. Retrial began on March 23, 2015. At trial, Plaintiff and Officer Tong both testified to their version of events. Other officers at the scene also testified, as did the two Amtrak conductors present at the

---

[1] Page numbers herein refer to those that the Court's electronic filing system automatically assigns.

scene, and Plaintiff's mother.[2] The jury heard testimony from the various healthcare personnel who treated Plaintiff following the incident, as well as Richmond Police Officer Ernest Loucas, who testified about the Richmond Police Department's Taser policy and training. In addition, two police practices experts testified about police officers' proper use of force in general and use of Tasers in particular. The experts took conflicting views on the reasonableness of the force used under hypothetical situations analogous to that presented here.

Following the close of evidence, Plaintiff moved for judgment as a matter of law pursuant to Rule 50(a), contending that no reasonable jury could conclude that Officer Tong's use of force against Plaintiff—either the arm grab, the leg sweep, or the three successive Taser applications—was reasonable. (*See* Dkt. No. 154.) The Court denied the motion and submitted the case to the jury. (*Id.*) After half a day of deliberation, the jury returned a verdict in favor of Officer Tong finding that Plaintiff had not proven that Officer Tong had used excessive force. (Dkt. Nos. 154, 157.) The Court thereafter entered judgment in favor of Defendant. (Dkt. No. 160.)

On April 29, 2015, Plaintiff filed the instant Renewed Motion for Judgment as a Matter of Law. (Dkt. No. 163.) Defendant opposes the motion. (Dkt. No. 166.) Plaintiff did not file a reply in support of his motion, and his time to do so has passed. *See* N.D. Cal. L.R. 7-3(c). The motion is thus fully briefed and ripe for adjudication.

## LEGAL STANDARD

Motions for judgment as a matter of law are governed by Federal Rule of Civil Procedure 50. Rule 50(a) governs pre-verdict motions, while Rule 50(b) applies to post-verdict motions.

In the Ninth Circuit, a motion for judgment as a matter of law pursuant to Rule 50(b) is appropriate when the evidence permits only one reasonable conclusion, and that conclusion is contrary to that of the jury. *Peralta v. Dillard*, 744 F.3d 1076, 1085 (9th Cir. 2014) (citation omitted); *Martin v. Cal. Dep't of Veterans Affairs*, 560 F.3d 1042, 1046 (9th Cir. 2009). In

---

[2] Plaintiff's motion repeatedly cites testimony from the first trial, including the first-trial testimony of Officers Billings and Vuong, even though these two officers testified at the second trial. (*See* Dkt. No. 139-1 at 1-2.) The jury verdict was based on testimony from the second trial only, save the testimony of certain medical personnel that the parties agreed to read into the record from the first trial. (*See* Dkt. Nos. 135-1.)

3

evaluating a motion for judgment as a matter of law, the court must "review the record as a whole." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000); *accord Cent. Office Tel., Inc. v. A T & T Co.*, 108 F.3d 981, 993 (9th Cir. 1997) ("[A] trial judge must consider all the evidence submitted in ruling on a motion for judgment as a matter of law[.]"), *rev'd on other grounds*, 524 U.S. 214 (1998). The court must view all evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *EEOC v. Go Daddy Software, Inc.*, 581 F.3d 951, 961 (9th Cir. 2009). "[I]n entertaining a motion for judgment as a matter of law, the court . . . may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Courts have found this to be particularly true for police misconduct cases: "judgment as a matter of law in excessive force cases should be granted sparingly . . . because police misconduct cases almost always turn on a jury's credibility determinations." *Santos v. Gates*, 287 F.3d 846, 853 (9th Cir. 2002) (citation omitted). At bottom, "[t]he court may not substitute its view of the evidence for that of the jury." *Winarto v. Tishiba Am. Elecs. Components, Inc.*, 274 F.3d 1276, 1283 (9th Cir. 2001) (citation omitted).

    At bottom, a jury's verdict "must be upheld if it is supported by substantial evidence . . . even if it is also possible to draw a contrary conclusion." *Pavao v. Pagay*, 307 F.3d 915, 918 (9th Cir. 2002); *Fisher v. City of San Jose*, 558 F.3d 1069, 1074 (9th Cir. 2009) (citations omitted). Thus, the Ninth Circuit makes clear, a party seeking judgment as a matter of law has a "very high" standard to meet. *Settlegoode v. Portland Public Schs.*, 371 F.3d 503, 512 (9th Cir. 2004); *Costa v. Desert Palace*, 299 F.3d 838, 859 (9th Cir. 2002). This is especially true where the party seeking judgment as a matter of law bears the burden of proof on issues necessary to judgment. *See Settlegoode*, 371 F.3d at 512. Unless the moving party can show that no reasonable juror would have reached a particular verdict, the court cannot grant the Rule 50 motion. *Id.* Where the evidence demonstrates a "close call . . . the rule is clear: [t]he verdict trumps." *Id.* (footnotes omitted).

4

1  Further, "[i]t is well-settled that any arguments raised in a post-trial Rule 50(b) motion for

2  judgment as a matter of law must have first been presented in a pre-verdict Rule 50(a) motion";

3  "[c]onsequently, a Rule 50(b) motion is limited to the grounds asserted in the pre-deliberation

4  Rule 50(a) motion." *Cotton ex rel. McClure v. City of Eureka, Cal.*, 860 F. Supp. 2d 999, 1010

5  (N.D. Cal. Mar. 16, 2012). The Ninth Circuit "strictly construe[s] the procedural requirement of

6  filing a Rule 50(a) motion before filing a Rule 50(b) motion." *Tortu v. Las Vegas Metro. Police*

7  *Dep't*, 556 F.3d 1075, 1082 (9th Cir. 2009).

**DISCUSSION**

Plaintiff contends that he is entitled to judgment as a matter of law because there was no reasonable suspicion to detain him in the first place; as a result he did not resist arrest or break any law when he refused to obey Officer Tong's commands during the consensual encounter. Plaintiff further argues that Officer Tong's use of force against Plaintiff elevated the encounter to a detention without reasonable suspicion, and therefore the only conclusion a reasonable jury could reach is that the arm grab, the leg sweep, and the three Taser deployments were each an independent violation of Plaintiff's right to be free from excessive force. The Court cannot reach that conclusion.

The evidence at trial was often conflicting, but viewing it all in the light most favorable to Defendant shows that a reasonable jury could conclude that Officer Tong's use of force was reasonable. "Whether an individual has been subjected to excessive force under the Fourth Amendment requires consideration of the reasonableness standard set forth in *Graham v. Connor*, 490 U.S 386, 395 (1989)," which "balance[s] the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." The *Graham* factors include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor*, 490 U.S. 386, 396 (1989). "The immediacy of the threat posed by the suspect is the most important factor." *Gonzalez v. City of Anaheim*, 747 F.3d 789, 793 (9th Cir. 2014) (citation omitted). The *Graham* factors are not exclusive, however; instead, the Ninth Circuit instructs courts to consider the totality of the

5

1  circumstances.  *Bryan v. MacPherson*, 630 F.3d 805, 826 (9th Cir. 2010).  Importantly, the

2  reasonableness of force is considered from the "perspective of an office on the scene without the

3  benefit of 20/20 hindsight[.]"  *Gonzalez*, 747 F.3d at 794.  And police officers "are not required to

4  use the least intrusive degree of force possible."  *Forrester v. City of San Diego*, 25 F.3d 804, 807-

5  08 (9th Cir. 1994); *see also Hammer v. Gross*, 932 F.2d 942, 946 (9th Cir. 1991) ("The question is

6  not simply whether the force was necessary to accomplish a legitimate police objective; it is

7  whether the force used was reasonably in light of *all* the relevant circumstances." (emphasis in

8  original)).  This is, in part, because "police officers are often forced to make split-second

9  judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of

10 force that is necessary in a particular situation."  *Graham*, 490 U.S. at 396-97.

11      The trial evidence included the following.  On March 16, 2012, Officer Tong, his partner,

12 and several BART police officers reported to the Amtrak Police Station, where train conductors

13 had reported fare evaders.  The fare evaders had disembarked the train and were seated on a bench

14 with the five officers standing in a semi-circle around them.  Officer Tong testified that he

15 recognized the suspects being arrested for fare evasion as violent individuals with whom he had

16 dealt in the past.  (Dkt. No. 167 at 4 (hereinafter "Tong Tr.") at 28:8-12.)  Plaintiff was on the

17 platform, as well.  Amtrak conductor Eric Bryson testified that Plaintiff was walking along the

18 platform towards the police activity, while Officer Tong and Plaintiff testified that Plaintiff was

19 standing stationary in a spot on the platform watching the officers' conduct.  (*Compare* Dkt. No.

20 167 at 27 (hereinafter "Bryson Tr.") at 28:19-29:22, *with* Tong Tr. at 7:10-11, Dkt. No. 167.)  In

21 any event, the testimony is clear that at some point Officer Tong approached Plaintiff and asked

22 him whether he was involved in the incident with the fare evaders.  (Dkt. No. 164-1 at 4:3-24.)

23 Officer Tong testified that when he initially approached Plaintiff, it was a consensual encounter

24 and he did not intend to arrest Plaintiff.  (Dkt. No. 164-1 at 4:3-24, 5:13-17.)

25      Officer Tong determined that Plaintiff was standing too close to the ongoing investigation

26 involving the fare evaders.  (Tong Tr. at 8:15-24.)  Officer Tong asked Plaintiff to back up.

27 Officer Tong and Bryson testified that he did so respectfully.  (Bryson Tr. at 31:4-8; Tong Tr. at

28 9:15-24.)  Plaintiff did not move back as instructed.  Officer Tong told Plaintiff to move back

United States District Court
Northern District of California

again, but Plaintiff did not. (Bryson Tr. at 30:4-8; Tong Tr. at 9: 7-18.) Amtrak conductor Rebecca Gettleman and Officer Tong testified that at this point Plaintiff placed his hands in his pockets. (Gettleman Tr. at 45:16-18; Tong Tr. at 10:13-14.) Officer Tong then ordered Plaintiff to take his hands out of his pockets, but Plaintiff did not. (Tong Tr. at 10:24-25; Gettleman Tr. at 45: 2-8, 17-22; 46: 1-4; 48:19-49:3; Bryson Tr. 31: 21-32:2.) Plaintiff did, however, take two steps back. (Tong Tr. at 11:1-5; 12:1-7.)

Officer Tong testified that he believed that based on Plaintiff's initial refusal to step back and his subsequent refusal to remove his hands from his pockets, that Plaintiff might be armed. (Tong Tr. at 11:6-11,12:17-21.) As a result, Officer Tong reached out and took hold of Plaintiff's arm. (Bryson Tr. at 33:9-19; Tong Tr. at 15:1-3.) Defense police practices expert Don Cameron testified that when a suspect puts his hands in his pockets during an encounter and refuses to show his hands that is "a major concern" for officers, who are trained to detain and search such an individual to assure that the suspect is not armed. (Dkt. No. 167 at 57 (hereinafter "Cameron Tr.") at 19:3-20:22.)

Plaintiff yanked his arm away from Officer Tong's grasp. (Bryson Tr. at 33:9-11, 20-23.) Officer Tong then grabbed Plaintiff's arm again, and Plaintiff pulled away again and began struggling with Officer Tong. (*Id.* at 34:2-18.) At this point, Officer Dean came over and grabbed Plaintiff's other arm, and the officers tried to gain control of Plaintiff to handcuff him. (Tong Tr. at 15: 11-17.) Unable to do so, Officer Tong then used a leg sweep to bring Plaintiff to the ground because, in his view, it was safer to control Plaintiff there than continuing to move about the train platform. (*Id.* at 18-24.) Plaintiff's police practices expert, Ron Clark, testified that a person is not permitted to resist an arrest, even if it is unlawful. (Dkt. No. 167 at 67 (hereinafter "Clark Tr.") at 70:18-20.) Defense expert Cameron testified that an officer can use "controlling" and "immobilizing" techniques when a person is actively resisting arrest by tensing up, bracing himself, attempting to pull away, or otherwise indicating that he is not going to cooperate with the officer. (Dkt. No. 62: 3-15.)

Witnesses testified that Plaintiff continued to struggle with the officers while lying on the ground: Bryson testified that the three men were "rolling around . . . on the platform." (Bryson Tr.

7

at 34: 12-17.) Officer Tong testified that he showed Plaintiff his Taser while Plaintiff was on the ground. (Tong Tr. at 17:16-18.) Still believing Plaintiff to be dangerous given the possibility that his hands—still in his pockets—were reaching for a weapon, Tong testified that he told Plaintiff to "stop resisting or I'm going to Tase you." (*Id*. at 18:15-16.) When Plaintiff continued to resist by thrashing his body, Officer Tong fired his Taser at Plaintiff's back in dart mode. (*Id.* at 18:14-22; 19:22-25, 20:1.) Officer Tong held the trigger down for 7 seconds—2 seconds longer than the standard, automatic cycle. (*Id.* at 20:4-10.) Officer Tong admitted at trial that he "was wrong in doing that," but it did not feel excessive to him at the time. (*Id.* at 20:17-21:1.) Defense expert Cameron testified that when two officers have already attempted to control a person and then performed a leg-sweep takedown and the individual continues to struggle and resists so that the officers are unable to handcuff him with his hands behind is back, then officers are permitted to use personal weapons, including fists, feet, knees, elbows, and devices including pepper spray, an impact weapon, and a Taser. (Cameron Tr. at 63:20-64:16.) Plaintiff's expert testified that if an officer using a "control hold type application of force" fails to gain control of a resisting individual, the officer is then permitted to use more significant force. (Clark Tr. at 68:23-69:13.) Clark further testified that when a subject will not obey commands, will "not yield his hands, despite physical efforts, and is subject to arrest" use of a Taser is appropriate. (*Id.* at 58:10-13.)

After one second, Officer Tong realized that Plaintiff was still thrashing about in the same manner as before the first Taser deployment, and he thought that the Taser had been ineffective because the spread of the darts might have been too small or the darts themselves might have been embedded only in Plaintiff's clothing, and not his body. (*Id.* at 22:15-21.) Other evidence at trial corroborated Officer Tong's belief that the first deployment was unsuccessful: Gettleman and Bryson each recalled only a single use of the Taser against Plaintiff (Gettleman Tr. at 50:13-21; Bryson Tr. at 41:6-7); Plaintiff testified that he did not realize that he had been tased three times until afterwards, and believed the first deployment was to his inner thigh, not his back (Dkt. No. 167 at 53 (hereinafter "Little Tr.") at 54:11. 55: 13-16.) Photographs entered into evidence pictured Plaintiff with the Taser darts in a leather jacket. (Dkt. No. 167 at 107 (hereinafter "Trial Ex. 28").) Indeed, Richmond Police Officer Ernest Loucas testified that Richmond officers are

1 trained that a Taser is not always effective depending on things like the distance between the
2 probes, and may be ineffective due to the target's heavy or thick clothing. (Dkt. No. 167 at 73
3 (hereinafter "Loucas Tr.") at 74:21-75:16; *id.* at 76:19-81:15.) Officers are trained to deploy the
4 Taser in drive stun mode if it is ineffective in dart mode. (*Id.* at 39:1-9.) Richmond officers are
5 also trained that the Taser may be used against a subject who is actively resisting arrest even if the
6 individual is not actually attacking the officers. (*Id.* at 84:15-22.) Accordingly, Officer Tong fired
7 the Taser again, this time in drive stun mode to Plaintiff's inner thigh. (Tong Tr. at 22:19-23;
8 Gettleman Tr. at 47: 20-24.) Officer Tong testified that the second deployment was not effective,
9 either. (Dkt. No. 164-1 at 16:4-10.) So, eight seconds after the second deployment in drive stun
10 mode had ended, Officer Tong tased Plaintiff a third time; Officer Dean then was able to handcuff
11 Plaintiff. (Tong Tr. at 24:18-21; Dkt. No. 167 at 103 (Trial Ex. 26).) Officer Loucas testified that
12 Richmond officers are taught that they may use up to three "effective deployments" of the Taser
13 on an individual who is actively resisting arrest. (*Id.* at 83:1-5.)

14 To be sure, there was significant evidence to counter this version of events. For example,
15 Little repeatedly testified that he was not resisting throughout this encounter and was merely
16 incapacitated by the Taser. And Plaintiff's police practices experts testified that an arm grab, leg
17 sweep, and three successive Taser deployments would be unreasonable under hypothetical
18 conditions identical to those that Plaintiff described. The jury considered all of this evidence and
19 apparently credited Officer Tong's account of events over Plaintiff's, and weighted the opinion of
20 the defense expert over Plaintiff's expert. It is not the Court's role to second-guess the jury's
21 credibility findings. *See Santos*, 287 F.3d at 853; *Winarto*, 274 F.3d at 1283. "On the question of
22 reasonable force, then, the Court must acknowledge that the jury was presented with competing
23 expert witnesses, and . . . it would be inappropriate for the Court to substitute its own view for the
24 conclusions reached by the jury after hearing all the competing evidence." *Beckway v. DeShong*,
25 No. 07-5072, 2012 WL 1355744, at *4 (N.D. Cal. Apr. 18, 2012). Although a different jury
26 might have concluded that Officer Tong should not have elevated his force under these
27 circumstances, Plaintiff has not met his very high burden of demonstrating that this jury's
28 conclusion that the use of force was reasonable was against the clear weight of the evidence.

9

Plaintiff's arguments to the contrary are unpersuasive. First, Plaintiff's emphasis on whether there was reasonable suspicion to detain Plaintiff is a red herring: this is not a false arrest case. As Defendant noted in his opposition, Plaintiff did not allege false arrest in the complaint or the amended complaint, and did not seek a false arrest jury instruction or request a false arrest question in the verdict form. Notably, Plaintiff did not file a reply in response to this argument, and his failure to refute it could be deemed to have abandonment of a contrary position. *See, e.g.*, *Dytch v. Yoon*, No. C 10-02915 MEJ, 2011 WL 839421, at *3 (N.D. Cal. Mar. 7, 2011); *Four Seasons Hotel Las Vegas v. Get-A-Way Travel, Inc.*, No. 2:06-CV-00077-KJD-RJJ, 2006 WL 1877128, at *2 (D. Nev. July 6, 2006). Abandonment or not, Plaintiff's attempt to train the Court's lens on the reasonableness of the arrest at this late stage of the litigation fails. The reasonableness of the force used is the relevant inquiry, based on the totality of the circumstances and in consideration of the *Graham* factors. *See Bryan*, 630 F.3d at 826.

Moreover, Plaintiff's analysis of the *Graham* factors—*i.e.*, severity of the crime, whether the suspect posed an immediate threat, and whether the suspect was actively resisting arrest—flips the Rule 50(b) standard on its head, ignoring all the evidence that belies the position he stakes out and drawing all inferences in Plaintiff's favor, instead of Officer Tong's, as the law requires. *See Go Daddy Software, Inc.*, 581 F.3d at 961. First, with respect to the severity of the crime, Plaintiff argues that fare evasion is non-violent so the "Court should find that any offense Plaintiff may have committed was [ ] non-serious for the purposes of the excessive force inquiry." (Dkt. No. 163 at 10.) But this request ignores Officer Tong's testimony that he feared Plaintiff was armed when he reached into his pocket. Drawing all inferences in Officer Tong's favor, it is the possible weapon possession or potential use thereof—not the other individuals' fare evasion charges—that is most relevant to the inquiry.

Plaintiff's argument regarding whether he posed an immediate threat fares no better. Plaintiff insists that no reasonable jury could conclude that a reasonable officer in Officer Tong's position would use force based on a belief that Plaintiff was reaching for a weapon. Plaintiff further asserts that Officer Tong's suspicion that Plaintiff might have been armed lacked evidentiary support. But Officer Tong testified that (1) he recognized the suspected fare evaders

10

as violent individuals; (2) he thought it suspicious that Plaintiff was ignoring his instructions; and (3) those things, coupled with Plaintiff's refusal to take his hands out of his pockets, led him to suspect that Plaintiff might be reaching for a weapon. Again, drawing all inferences in Officer Tong's favor, a reasonable jury could conclude that a reasonable officer could perceive Plaintiff as posing an immediate threat.

Finally, with respect to active resistance, Plaintiff argues that no reasonable jury could conclude that Plaintiff was actively resisting arrest. Plaintiff cites to *Beaver v. City of Federal Way*, 507 F. Supp. 2d 1137, 1144 (W.D. Wash. 2007) for the proposition that a person who is tased cannot engage in the type of "active resistance" that warrants further use of force. There, the court held that the defendant police officer used excessive force when he deployed a taser on the plaintiff a fourth and fifth time even after a second officer had arrived on the scene. *Id.* at 1145. Plaintiff is correct insofar as the *Beaver* court held that a Plaintiff who is *incapacitated* by a Taser cannot actively resist arrest. But *Beaver* is distinguishable. In that case, the officers were informed in advance that the plaintiff was unarmed. *Id.* at 1140. The officers also acknowledged that the first use of the taser was effective. *Id.* at 1141. What is more, the plaintiff indicated to the officers that he was unable to comply with their commands. *Id.* at 1141, 1146. In contrast to *Beaver*, here there was evidence before the jury that Officer Tong was concerned that Plaintiff was armed, and that the first two taser deployments were ineffective. If ineffective, Plaintiff's continued thrashing was not due to incapacitation, but rather continued active resistance. Thus, there is substantial evidence to support the jury's conclusion that Plaintiff was actively resisting arrest until the third Taser deployment allowed the officers to handcuff him, and therefore that each deployment of the Taser was reasonable under the circumstances.

In short, although Plaintiff has made a credible argument that a reasonable jury might have reached a different verdict, he has not demonstrated "that the jury [here] has reached a seriously erroneous result" given the evidence that was presented at trial. *Carrethers v. Bay Area Rapid Transit*, No. 09-1101, 2012 WL 1004847, at *2 (N.D. Cal. Mar. 26, 2012).

## CONCLUSION

"Courts are not free to reweigh the evidence and set aside the jury verdict merely because

11

the jury could have drawn different inferences or conclusions or because judges feel that other results are more reasonable." *Tennant v. Peoria & Pekin Union Ry.*, 321 U.S. 29, 35 (1944). For the reasons described above, Plaintiff's post-verdict motion for judgment as a matter of law is DENIED. The verdict shall stand.

This Order disposes of Docket No. 163.

**IT IS SO ORDERED.**

Dated: June 5, 2015

_____
JACQUELINE SCOTT CORLEY
United States Magistrate Judge

12